IN THE UNITED STATES DISTRICT COURT
FOR THE  CENTRAL DISTRICT OF ILLINOIS
URBANA  DIVISION

| | |
|---|---|
| PRIMAL DE LANEROLLE, on behalf of himself and a class of similarly situated others,<br><br>    Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE ILLINOIS STATE UNIVERSIITIES RETIREMENT SYSTEM, and its board members, COLLIN VAN METER, ANDRIY BODNARUK, RICHARD FIGUEROA, JAMIE-CLARE FLAHERTY, J. FRED GIERTZ, SCOTT HENDRIE, JOHN LYONS, STEVEN ROCK, ANTONIO VASQUEZ, MITCHELL VOGEL,<br><br>    Defendants. | Case No. 23-2261 |

**COMPLAINT FOR DUE PROCESS VIOLATIONS
OF THE CONSTITUTION OF THE UNITED STATES
AND OF THE STATE OF ILLINOIS
AND OF 42 U.S.C. §1983**

Plaintiff, Primal de Lanerolle, on behalf of himself and a class of similarly situated others, by and through his attorney, Aaron B. Maduff, of Barrett & Farahany, complains against the Illinois State Universities Retirement System as follows:

**Introduction**

1.    The State Universities Retirement System provides retirement pensions for all employees of state universities and community colleges in Illinois from gardeners to security personnel, to janitorial and maintenance personnel, to secretarial, clerical and academic personnel.

Each year, some 2500 members retire, relying on their pension payments from the system. Each year, hundreds of those members are entitled to refunds for overpayment into the system as described herein. Those over payments average approximately, $109,000 for each of those individuals.

2.      Plaintiff was a professor at the University of Illinois at Chicago for 36 years until his retirement on June 30, 2020. As an employee of a state university, Plaintiff was enrolled in the State Universities Retirement System. Members of the system receive a fixed pension payment each month upon retirement calculated on the basis of their top annual salary for four consecutive years. At the time of retirement, a calculation is done to determine the expected total payments the member will receive from the system based on calculation where the monthly benefit is multiplied by the number of actuarily anticipated months left in the member's life. Where that number is less than the amount that the member has contributed to the system, the member is to receive an immediate payment for the difference.

3.      The Retirement System knowingly delayed making the appropriate refund that it knew was due to the Plaintiff and to numerous other retiring members in a timely fashion. During that time period, the Retirement System earned as much as 23.8% on Plaintiff's money and a similar return on the money of similarly situated others. Correspondingly, Plaintiff (and others) was deprived of any opportunity to invest his funds and earn interest during the delay in making the refund.

4.       Plaintiff filed a claim with the Retirement System to get his refund of excess contributions plus the amount it had earned on Plaintiff's unrefunded money. While the Retirement System admitted that the delay in refunding Plaintiff's excess contributions was unreasonable it

found no statutory authority to provide Plaintiff the funds for which it was unjustly enriched by keeping Plaintiff's money invested for itself.

5.      Plaintiff therefore brings this action on behalf of himself and a class consisting of all retired members of the State Universities Retirement System of Illinois who have in the past or may in the future be subjects of delayed processing of their overpayments. Plaintiff seeks for himself, and such similarly situated others the monies that were unjustly taken from them and for injunctive relief requiring the Retirement System to properly reimburse overpayments in a timely manner and where not done so in a timely manner refund to the member any monies earned on their improperly withheld money.

## Parties

6.      Plaintiff, Primal de Lanerolle, (hereinafter "Plaintiff") is a citizen and resident of the United States of America. Plaintiff was a professor in the Department of Physiology and Biophysics at the University of Illinois College of Medicine for 36 years before his retirement in or about July of 2020. Plaintiff was certified into the State Universities Retirement System as of November 1, 1984 and elected to participate in the Systems Portable Defined Benefit Plan in December of 1998.

7.      Defendant, State Universities Retirement Systems (hereinafter "the System" or "SURS") is a pension fund created by the Illinois Pension Code and is charged with administration of pension benefits for its members, typically employees of Illinois' 12 Public Universities and 48 Community Colleges.

8.      The following Defendants are members of the Board of Trustees who approved the actions taken by the Retirement System in this cause and are sued in their individual capacities for

money damages and are named in their official capacities for injunctive relief. Collin Van Meter, Andriy Bodnaruk, Richard Figueroa, Jamie-Clare Flaherty, J. Fred Giertz, Scott Hendrie, John Lyons, Steven Rock, Antonio Vasquez, Mitchell Vogel.

9.     Defendant Board of Trustees of the Illinois State Universities Retirement System is named in its official capacity for the claims for prospective injunctive relief.

## Jurisdiction

10.     This court has original jurisdiction of this civil action in that the claims of this Complaint arise under the Constitution and laws of the United States. 28 U.S.C.§ 1331 and 1343 as this case is brought for violations of the Constitution of the United States and 42 U.S.C. §1983.

## Venue

11.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because at all relevant times, Defendant regularly conducted business in this District and a significant portion of the acts giving rise to this complaint occurred in this District.

## Facts

### Plaintiff's Pension Membership Background

12.     Plaintiff was certified  into SURS as of November 1, 1984, and on December 22, 1998, the Claimant elected to participate in the SURS Portable Defined Benefit Plan.

13.     On June 30, 2020, SURS received the Plaintiff's application for a retirement annuity with an effective date of July 1, 2020.

14.     During the ten years leading up to his retirement-beginning in 2010-the Claimant requested and received detailed, calculated estimates of his potential retirement benefits nearly every year.

15.     In later estimates where SURS had identified that the Claimant might be receiving a refund of excess contributions because he would likely reach the maximum benefit. As early as 2014, SURS estimated that it was holding approximately $45,300 of excess contributions.

16.     In the estimate letters provided to the Claimant on June 1, 2017, August 2, 2018, June 7, 2019, and May 11, 2020, SURS further explained the process:

> A refund of excess service credit/contributions will be returned to you if maximum benefit is reached. Based on this estimate, approximately $247,030 [$331 ,200 in 2018 estimate; $410,900 in 2019 estimate; $465,000 in 2020 estimate] is in excess.

17.     In addition, the Claimant received a detailed "Portable Retirement Estimate and Planning Fact Sheet (Tier 1)." In this Fact Sheet, Claimant was advised, among other things:

> Any lump sum payments such as a service or contribution waiver. will be paid at the time your claim is finalized. You will receive notification of available options at the time your application for retirement is received.

18.     The Claimant's Preliminary Estimated Payment ("PEP") was certified on July 13, 2020, and he began to receive his monthly PEP payments in the net amount of $7,733.39 beginning on July 29, 2020.

19.     SURS delayed review of the application and withheld Plaintiff's money until July 1, 2022.

20.     From January of 2021 until the Claimant's final retirement claim was approved in June 2021, the SURS Staff actively engaged in multiple reviews.

21.     The Claimant contacted SURS multiple times to inquire about the status of the claim.

22.     On March 16, 2021, SURS advised Claimant by letter that it had calculated his excess contributions that exceeded the amount needed to provide the maximum retirement annuity available to him by law which would result in a refund in the amount of $501,446.74.

23.    On June 30, 2021, SURS issued the final determination on the Claimant's retirement annuity.

24.    The "Certification of Retirement Annuity" provided detailed information regarding the calculation of the annuity.

25.    Pursuant to 80 Ill. Admin. Code §1600.420(f) "Once the retirement claim has been finalized, the member will receive a check for the difference between the PEP payments and the actual monthly benefit amount that is due him or her, retroactive to the effective date of the member's annuity, without interest."

26.    Plaintiff explained to SURS that "If [the excess contributions] had been turned over swiftly I would have invested in them immediately. The S&P 500 has grown by some 33% in the last year. To put it into full perspective, this means my funds could have grown by another $150-160,000 during the last year. This is a huge loss for my wife and me."

27.    SURS acknowledged the Claimant's July 8, 2021 request and responded: the "SURS statute requires that interest stop accruing on a member's account effective their date of retirement."

28.     SURS achieved a 23.8% investment return for fiscal year 2021 during the time that it unreasonably withheld the refund to Plaintiff.

29.    The delay in refunding Plaintiff's over payment resulted in SURS receiving a "windfall" of nearly $119,443.34 during fiscal year 2021 by "improperly holding" the Claimant's excess contribution for one year after the date of his retirement.

30.    SURS Staff explained that its policy is to return excess contributions without payment of any additional investment earnings.

31.     SURS Staff already "admitted the delay was unreasonable" and that the "unique circumstances" justified providing equitable relief to the Claimant in the form of an additional interest payment, the Claimant contended that the sole issue is the question of the "appropriate equitable award based on the significant unjust enrichment that SURS achieved from that improper delay."

32.     SURS has never paid an annuitant in its defined benefit plan for "investment returns," to a retiring member.

Class Allegations

33.     Plaintiffs bring this action on behalf of a class consisting of all retired members (and as to the injunctive relief sought, all other members as they will at some point retire) of the State Universities' Retirement System of Illinois who have been in the past or may in the future be entitled to a refund of an overpayment.

34.     The proposed Plaintiff Class is believed to exceed eight hundred current retirees (and growing yearly) who have been contacted by SURS with a claim of overpayment, (and a group of potential retirees for whom injunctive relief is sought that is immeasurable) such that joinder of all members is impracticable.

35.     There are questions of law or fact common to the class, which common questions predominate over questions affecting only individual members.  In particular this includes *inter alia*:

      a.   How the pension code works and is applied;

      b.   What relief is available under the pension code; and

c.   What procedures SURS should be required to follow to avoid unnecessarily withholding overpayments in the future and to the extent that it does, how the affected pension member should be compensated.

36.   The individual Plaintiff herein who seeks to represent the class will fairly and adequately protect the interests of the class. He is knowledgeable about the problem, and he is capable of providing facts and testimony on behalf of the class.

37.   The undersigned counsel has among them class action experience and will provide the necessary expertise to represent the class.

38.   Moreover, prosecuting separate actions could result in varying adjudications with respect to individual class members that would establish incompatible standards of conduct by SURS.

39.   SURS claims to be bound by the Pension laws in such a manner that it will continue to take property of retiring members without just compensation and order of Court is required to create consistency as to how all retired and retiring members are treated.

40.   The common questions of law and fact so predominate over any potential questions affecting individual members that a class action is the superior method of adjudicating this controversy over all others.

## DEMAND FOR RELIEF FOR VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION 38 U.S.C. §4301 *ET SEQ.*

41.   Plaintiff for himself and the class restates and realleges paragraphs 1 through 40 as paragraph 41 of this Demand for Relief.

42.     The policy of SURS and its actions constitute an arbitrary and capricious act of taking the protected property rights of Plaintiffs and of the retired members of the Plaintiff Class (and the likelihood that they will similarly take protected property rights of members retiring in the future) without due process of law.

43.     As a consequence of one or more of the foregoing acts of the Defendants, Plaintiff and retired members of the class were deprived of significant financial property interests in the overpayment of the purchase of their pension annuities without due process of law.

44.     Defendants are unable to or unwilling to provide due process because their view of the Pension Laws of the State of Illinois prevent them from being able to do so.

45.     Because of the foregoing policy and actions of SURS Plaintiff and members of the class will be deprived of significant financial property interests in the overpayment of the purchase of their pension annuities without due process of law.

46.     As a result, an injunction prohibiting the defendants from taking any actions that would allow SURS to hold the overpayments of members for unreasonable delays in calculating a member's final pension annuity award is needed.

47.     The foregoing results in a deprivation of Plaintiff's and Retired Class Members' Rights and the likelihood of a future deprivation of the future rights of Class Members retiring in the future as guaranteed them by the Fourteenth Amendment to the Constitution of the United States enforceable under 42 U.S.C. §1983.

WHEREFORE, Plaintiff, Primal de Lanerolle, on behalf of himself and the class described herein, respectfully requests that this Honorable Court enter judgment in their favor and against Defendants and award the following relief:

a)  An order declaring that the actions of the defendants asserting the authority to withhold overpayments without interest to the annuitant to be a deprivation of property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States;

b)  An order awarding Plaintiff and all retired members of the class the monies improperly withheld by SURS and all monies earned on those monies;

c)  A permanent injunction prohibiting Defendants from reducing the pension annuity, or taking the interest or earnings from monies of Plaintiff or any other class member at when they retire in the future, which Defendants earn by keeping the property of Plaintiff or any other class member;

d)  That this court enter an injunction prohibiting defendants from holding any claimed overpayments for annuity amounts without a just payment of interest to the retiree;

e)  An award to Plaintiff and the class of their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for such other relief as this court deems just.

Respectfully submitted,

Primal de Lanerolle on behalf of himself and a class of similarly situated others,

By: s/ *Aaron B. Maduff*

His Attorney

Aaron B. Maduff
Atty. No. 6226932
Barrett & Farahany
77 W Wacker Dr.
Suite 4500
Chicago, IL 60601
(312) 800-8581
Aaron@justiceatwork.com